STATE

v.

Allan MACK.

No. 80–532–C.A.

Supreme Court of Rhode Island.

June 11, 1982.

Dennis J. Roberts II, Atty. Gen., Frederick C. B. Smyth, Sp. Asst. Atty. Gen., for plaintiff.

Frederick A. Lawrence, East Greenwich, for defendant.

## OPINION

SHEA, Justice.

The defendant, Allan Mack (Mack), was convicted by a jury of the Superior Court on a two-count criminal information. He was charged with burning or causing to be burned the personal property of another having a value in excess of $25 in violation of G.L.1956 (1969 Reenactment) § 11–4–4 [1] and with conspiracy in violation of § 11–1–6, as enacted by P.L. 1975, ch. 283, § 2. We affirm his conviction and dismiss the appeal.

---

1. The Legislature has since amended G.L.1956 (1969 Reenactment) chapter 4 of title 11 in P.L. 1980, ch. 247, § 1. The section under which Mack was charged is now G.L.1956 (1981 Reenactment) § 11–4–5, entitled "Arson-Fourth degree." The minimum dollar valuation of property must now be $100.

The evidence established that between 3:30 and 4 p. m. on January 21, 1976, a thirty-six-foot houseboat exploded and burned while sitting on land in winter storage at the Pirate Cove Marina in Portsmouth, Rhode Island. The fire completely destroyed the boat, resulting in a loss in the amount of about $25,000.

A witness at the scene, Gary L. Miller, testified that he had heard two explosions and the sound of a car "tak[ing] off kind of fast." He then stepped to a point where he could see the marina clearly and saw the fire and also observed a car leaving the scene. He identified the car as a blue Plymouth Valiant and said that it was in good condition. He next observed a man who "looked kind of red" running toward the car. Miller identified that man in the courtroom as Alvin J. Britton, who was charged along with Mack. Britton pleaded nolo contendere and testified for the state.

The car backed up, and Britton "dove into the front seat", according to Miller. When the car backed up, Miller was able to see a forest-green license plate bearing the white numerals 6213. Portsmouth, Rhode Island, police ran a license-plate check and discovered that New Hampshire registration No. RC 6213 belonged to Mack.

Alvin J. Britton testified that he had been an occasional employee of Mack's and that on January 21, 1976, Mack invited Britton to accompany him to Rhode Island, ostensibly to see friends. They drove in Mack's blue Plymouth Valiant. Britton was familiar with Mack's car, but he had never driven it himself. Along the way Mack began to tell him of a certain "job" that had to be done by midnight and that it would involve setting fire to a boat. They stopped at various gasoline stations and filled five or six large plastic buckets with gasoline.

Britton testified that after they had found the houseboat, he handed the containers full of gasoline to Mack who was standing in the boat. Britton then climbed aboard, and saw Mack soaking the lower deck and stairway with gasoline. Mack handed Britton a book of matches and said he was going to warm up the car. Britton then lit and dropped a match onto the deck. The resulting explosion knocked him down and caused him to be burned on his face, hands, and torso.

Mack drove Britton to the Union-Truesdale Hospital in Fall River, Massachusetts, where Britton was admitted immediately. The receptionist in the emergency room said that Mack and Britton arrived between 4:15 and 4:30 p. m. Britton was moved to a hospital in his native Haverhill, Massachusetts, several days later.

When the Portsmouth, Rhode Island, police located Britton in Haverhill, he agreed to return to Rhode Island where he subsequently gave a statement in which he implicated Mack.

At trial Mack took the stand in his own defense. He categorically denied having set the houseboat on fire or having solicited Britton to do so. He denied having been in Portsmouth, Rhode Island, or at the Union-Truesdale Hospital in Fall River, Massachusetts, on January 21, 1976. He stated that at the time of the fire he was in Malden, Massachusetts, at a diner and at a barber shop. The diner owner testified that Mack had been in Malden but admitted on cross-examination that he could not be sure of the date.

Mack testified that Britton had borrowed his car on January 21 and that he found it returned in his yard the next morning, but that its license plates (RC 6213) were missing. He reported the theft to the New Hampshire Division of Motor Vehicles on January 22 or 23. He was issued a new set of plates. On cross-examination he denied having told the Rhode Island police a different story about his registration plates—that they had been stolen on January 19, 1976, while the car was in Woonsocket, Rhode Island, and where it had stayed until January 22.

Mack has raised several issues on appeal. They are without merit and do not justify reversal of the conviction or the granting of a new trial.

Mack argues that the evidence fails to prove that he had set fire to the boat or had caused it to be set on fire. He claims that at most the evidence proved only Britton's complicity. Mack relies on the alibi evidence and on the fact that at no time during the testimony did Britton say that Mack had actually told him to light the match and ignite the gasoline.

■ We find that the record contains sufficient evidence to support the jury verdict. Plainly, the question of Mack's whereabouts was an issue to be decided by the jury. The evidence amply supports the jurors' conclusion that Mack was in Portsmouth, Rhode Island, at the time of the fire. The absence of evidence of a direct verbal order given by Mack to Britton does not require reversal of Mack's conviction. The evidence introduced does support the reasonable inference that Mack did indeed direct Britton to set the fire.

There was evidence that showed that Mack invited Britton to go to Rhode Island. While they were enroute Mack first brought up the matter of burning the houseboat. He drove to Portsmouth and doused the boat with gasoline. Mack handed Britton the matches and said that he would be outside. It is obvious that such evidence describes activity well within the statutory phrase "causes to be burned."[2]

■ Mack's next issue on appeal relates to the denial of his motion for a new trial. He argues that the verdict was against the weight of the evidence. However, he points to nothing in the record, except for the alleged bias and imperfect memories of witnesses, to indicate that the trial justice may have overlooked or misconceived evidence in denying Mack's motion for a new trial. In effect Mack argues that the evidence that he presented was more credible than the state's evidence. Credibil-

ity is strictly within the province first of the jury and then of the trial justice when he rules on the motion for a new trial. Our review of the record persuades us that the trial justice acted properly. *Belanger v. Silva*, 120 R.I. 19, 384 A.2d 605 (1978).

Mack also claims constitutional error. He claims that tangible evidence, a New Hampshire motor vehicle license plate No. RC 6211, a temporary plate made of wood and painted to look like the New Hampshire registration plate, was seized illegally by the police. Apparently wooden replicas of motor vehicle registration plates are authorized by the New Hampshire Division of Motor Vehicles to replace lost original plates. The wooden plate in question was seized when the Portsmouth, Rhode Island, deputy police chief, Madison A. Bailey, Jr. went to New Hampshire to locate Mack with Gary Miller, the witness at the fire. They were accompanied by a Rhode Island deputy fire marshal and two Seabrook, New Hampshire police officers. Bailey testified that when they arrived at Mack's address, Miller identified the blue Plymouth Valiant which was backed into the driveway but was still outside and in plain view. Miller said, "That's the car right over there." Bailey observed that the garage door at the end of the driveway was partially open, although Mack testified at the trial that it was closed at the time. Nevertheless, Bailey walked toward the door. The wooden plate bearing No. RC 6211 was lying on the garage floor, "[r]ight at the edge of the door to the garage." The plate was face up, according to the deputy fire marshal. Bailey asked one of the Seabrook police officers to take the plate. Mack argues that it was illegal for the police to enter his garage and remove the plate without a warrant.

■ Unfortunately, at trial Mack at no time objected to the introduction of the

**2.** Mack claims that Britton's testimony is inadmissible and relies on *State v. Patriarca*, 112 R.I. 14, 308 A.2d 300 (1973), wherein the court stated that "declarations of a co-conspirator made after the termination of the conspiracy are admissible only against the declarant." *Id.* at 40, 308 A.2d at 316. That case is inapplica-

ble to the case at bar. The critical part of Britton's testimony in which he implicated Mack not only covered matters that arose during the pendency of the conspiracy but also concerned his own personal knowledge of events.

plate into evidence. Therefore, he has waived any appeal rights on this issue. *State v. Byrnes*, R.I., 433 A.2d 658 (1981). Nevertheless, even if he had made a timely objection at trial, the introduction of the plate would still be harmless error beyond a reasonable doubt. We hold thus because the plate seized did not bear the same number as the one that Miller had recorded from the blue Valiant at the scene of the fire; the number that he recorded was RC 6213, not RC 6211.[3]

After careful review of the record we fail to see any relevance that the plate may have had to the finding of Mack's guilt. Absent the wooden plate with the different number, the evidence still provides sufficient basis for the finding of Mack's guilt.

Mack's second claim of constitutional error is that he never waived his rights while in Seabrook, New Hampshire. Deputy chief Bailey testified that he read Mack his rights first in Seabrook on January 30, 1976, and later in Portsmouth, Rhode Island, on March 19, 1976. Bailey said he saw Mack sign both waiver-of-rights forms. Bailey's own signature appears thereon as witness. Mack denied ever having signed the first form and argues before us on appeal that the state should have obtained an expert in handwriting analysis to prove the signature.

Mack's denial that the signature was his does not require expert testimony about his alleged signatures. Such expert testimony might be necessary when the signatory is unavailable at trial or when there are no witnesses to testify that they observed the party sign his name. Such is not the case here. Bailey testified that he witnessed both of Mack's signatures. This situation raises a question of fact for the jury, and there is no error.

For these reasons the appeal is denied and dismissed. The conviction is affirmed, and the papers are remanded to the Superior Court.

3. There was evidence at the trial that plate No. RC 6211 was registered to Mack and affixed to