STATE

v.

Warren HARRIS.

No. 2002–253–C.A.

Supreme Court of Rhode Island.

March 17, 2005.

Christopher R. Bush, Providence, for Plaintiff.

Paula Lynch, East Greenwich, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, Warren Harris, appeals from a Superior Court judgment of conviction for assault with a dangerous weapon, contending that the state offered insufficient evidence to prove the offense beyond a reasonable doubt. In addition, he seeks to raise for the first time on appeal an alleged violation of the Sixth Amendment's Confrontation Clause; he asserts that he is entitled to raise this argument at this time in view of the fact that the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) was issued subsequent to his conviction. For the following reasons, we affirm the conviction.

### Facts/Travel

On the night of August 6, 2000, defendant was arrested and later charged with (1) assaulting Melody Eason with a dangerous weapon (specifically, a kitchen knife) and (2) refusing to relinquish a telephone.

Earlier that night, at approximately 11 p.m., Woonsocket police officers John Scully III and Thomas Calouro were advised that there had been a call to the police indicating that there was a domestic disturbance at 115 South Street.[1] Upon arriving at the premises, the officers heard a male voice yelling from the second-floor apartment. After knocking; the officers entered the apartment, where they found Melody Eason and her sixteen-year-old daughter, Cassandra Eason, as well as defendant Warren Harris.[2] The officers spoke with all three individuals and were informed that, in the course of an argument between Warren Harris and Melody Eason, Harris had put a knife (or knives) to Melody Eason's throat and threatened to slit her throat while she slept. The officers searched part of the apartment, but they did not find a knife.

Several weeks after defendant's arrest, Cassandra made a written statement to the police. The record contains no other written witness statements.

Harris proceeded to trial on October 31, 2001. During the jury-waived trial, the state presented its case-in-chief through the testimony of Officers Scully and Calouro. Cassandra was subpoenaed, but she failed to appear to testify at trial. On direct examination by the state, Officer Calouro testified that "Cassandra * * * stated that she was woken up to Mr. Harris having two knives to Melody's throat." Defense counsel objected on hearsay grounds to that statement by Officer Cal-

---

1. At trial, Catherine Eason, the grandmother of Cassandra Eason, testified that it was she who made the call to the police after Cassandra had awakened her and told her that her parents, Melody Eason and Warren Harris, were arguing and that her father had a knife.

2. Warren Harris is the father of Melody Eason's two daughters, Cassandra and Caroline Eason. Caroline, age twelve, apparently was elsewhere in the apartment at the time of the incident.

ouro, and the court sustained the objection and struck the statement.[3] Significantly, however, the same hearsay evidence was subsequently used by the defense during the cross-examinations of Officer Calouro and Officer Scully.[4] In addition, it was used by the state during the direct examination of Officer Scully without the defense making any objection.[5] Moreover, at the close of the state's case, the defense introduced for impeachment purposes the written statement that Cassandra had made to the police several weeks after Harris's arrest.[6]

Melody Eason testified for the defense at trial, and she denied that Harris had had a knife or had put a knife to her throat. She also denied that she had told the police officers that Harris had a knife.

At the close of all the evidence, defendant moved to dismiss, challenging the legal sufficiency of the evidence presented by the state. The trial justice denied the motion to dismiss and found Harris guilty of both charges. On February 12, 2002, defendant received a one-year suspended sentence, with three years probation, on the assault charge and a three-month suspended sentence, with three months probation, on the failure to relinquish a telephone charge, both sentences to run concurrently. The defendant timely ap-

---

3. It was during the state's direct examination of Officer Calouro that the testimony at issue first occurred:

    "Q. Did she—strike that. How long did you and Officer Scully speak with [Melody]?

    "A. Approximately three minutes.

    "Q. And what was the form of the conversation? Was it a question and answer, did she just sort of give you an explanation of what happened?

    "A. It was a question and answer until Cassandra, who was on the couch, stated that she was woken up to Mr. Harris having two knives to Melody's throat.

    "[DEFENDANT'S ATTORNEY]: Your Honor, I object to the hearsay from Cassandra.

    "THE COURT: Sustained. It may be stricken."

4. For example, the defense deliberately opted to use Cassandra's statement during its cross-examination of Officer Scully:

    "Q. And it was her daughter Cassandra who first mentioned anything about knives?

    "A. That's correct.

    "Q. And she said he had two knives to her mother's throat?

    "A. Yes.

    " * * *

    "Q. And did you indicate in that witness statement that Cassandra Eason was sleeping on the couch, she woke up to Warren holding two knives at Melody's throat?

    "A. That's correct.

    "Q. I take it that's something that Cassandra told you?

    "A. Yes."

5. "Q. Did you ask [Melody] anything else?

    "A. No. Her daughter, Cassandra, who was standing there on the side of her, said, 'Tell them.' And she, you know, kind of shook it off to try to ignore her, and I said, 'The only way the police can help you is if you tell us what happened.' And that's when [Cassandra] said that Warren had two knives to her mother's throat.

    "Q. Did Melody Eason respond at all when that comment came out?

    "A. She looked at her daughter and she said, 'Yeah, he had two knives, and he said that he was going to cut my throat when I was sleeping.' "

6. "I was downstairs on the couch when I heard them arguing. I heard my mother telling Warren to leave because he was drunk. I heard Warren telling my mother that he wasn't leaving. They kept arguing. I heard Warren tell my mother that he *could* take two knives and cut her throat. Warren came downstairs and he had a knife in his right hand, I think it was his right hand. Warren then took the phone that was on the table and he started to stab it. He went back upstairs and started to yell at my mother again. I then went to my grandmother's house at 157 West Street to call the police." (Emphasis added.)

pealed to this Court with respect to the assault with a dangerous weapon conviction.

## Analysis

### 1. The *Crawford* Argument.

■ The defendant argues for the first time on appeal that the admission of Cassandra's oral statement to the police violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.[7] The defendant's challenge is based on the very recent United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

In *Crawford*, a criminal case that originated in the State of Washington, a husband and wife each were given *Miranda* warnings and questioned about their possible involvement in a stabbing. During the interrogation, the wife gave tape-recorded statements implicating her husband in the crime, after which he was charged with assault and attempted murder. At the defendant's state court trial, the wife was called to testify, but she refused, invoking her marital privilege. *Crawford*, 124 S.Ct.

at 1357–58. The prosecution then sought to offer into evidence the wife's statement made during the interrogation as a statement against her penal interest pursuant to Rule 804(b)(3) of the Washington Rules of Evidence.[8] The defendant objected on Sixth Amendment grounds, but the state trial justice admitted the wife's statement, finding it to be trustworthy.[9] After the jury convicted the defendant of assault, he appealed, arguing that the admission of his wife's statement violated his Sixth Amendment right to confrontation. *Crawford*, 124 S.Ct. at 1358. The case eventually reached the United States Supreme Court, which was persuaded by the defendant's argument and held that testimonial out-of-court statements of a witness are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had prior opportunity to cross-examine the witness. *Id.* at 1365.[10]

Harris now argues (1) that, in view of the Supreme Court's ruling in *Crawford*, the state should have been prohibited from introducing what Cassandra said to the police on the night of August 6, 2000, and (2) that, without the admission of Cassan-

---

7. The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

8. In the State of Washington, the marital privilege does not apply to a spouse's out-of-court statement that is admissible pursuant to a hearsay exception. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1358, 158 L.Ed.2d 177 (2004).

9. The Washington state trial justice cited the United States Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) as authority for his decision to allow the prosecution to use the wife's testimony. *Crawford*, 124 S.Ct. at 1358.

10. In so holding, the Supreme Court in *Crawford* abrogated its earlier decision in the case

of *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, in which it had held that the testimonial statement of an unavailable witness against a criminal defendant would not be barred if the statement bore adequate indicia of reliability.

An insightful and helpful law review note analyzing the *Crawford* decision appears in the Harvard Law Review as part of that law review's annual survey of "Leading Cases" from the preceding term of the United States Supreme Court. This Harvard Law Review note succinctly and accurately summarizes the holding in *Crawford* as follows: "[T]he Confrontation Clause protects the criminally accused against the admission of out-of-court statements that are testimonial in nature, unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine him." Note, *Leading Cases*, 118 Har. L. Rev. 248, 316, 317 (2004).

dra's statement, the state would not have been able to meet its burden of proof at trial.

At one point in the trial, defendant did object on hearsay grounds to the prosecution's use of Cassandra's oral statement, and the judge ruled that the statement be stricken. However, in stark contrast with the procedural context in which the statement at issue in *Crawford* came before the appellate courts, later in the trial of this case, defendant did not object to the hearsay statement at issue on one occasion and defendant's counsel actually introduced the statement himself on more than one occasion. Significantly, defendant chose to employ Cassandra's hearsay evidence for impeachment purposes as part of his cross-examination of a prosecution witness.[11]

■ This Court will review on appeal only those issues that have been properly preserved in the court below.[12] *See, e.g.,* *State v. Saluter,* 715 A.2d 1250, 1258 (R.I. 1998) ("It is axiomatic that 'this court will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' ") (quoting *State v. Gatone,* 698 A.2d 230, 242 (R.I. 1997)); *State v. Long,* 488 A.2d 427, 432 (R.I.1985) ("A party who fails to assert his specific objections is deemed to have waived his rights on appeal."). When the issue is evidentiary, Rule 103(a)(1) of the Rhode Island Rules of Evidence specifically provides that a finding of error "may not be predicated upon a ruling which admits * * * evidence unless a substantial right of the party is affected, and * * * a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."[13]

■ It is well established in Rhode Island and in other jurisdictions that a de-

---

**11.** Because we conclude that defendant in this case waived his Sixth Amendment right to confrontation by offering the statement at issue, (see discussion *infra*) we are not required to decide whether a defendant's unsuccessful objection to a statement on hearsay grounds alone would have preserved the *Crawford* issue for review on appeal.

**12.** It is true that, in very limited circumstances, this Court has permitted arguments concerning basic constitutional rights to be presented for the first time on appeal. *See State v. Mastracchio,* 672 A.2d 438, 446 (R.I. 1996). For this exception to be successfully invoked, however, it must involve (*inter alia*) an issue that is "based upon a novel rule of law of which counsel could not reasonably have known at the time of trial." *State v. Burke,* 522 A.2d 725, 731 (R.I.1987); *see also State v. Breen,* 767 A.2d 50, 57 (R.I.2001). Although the Supreme Court's holding in *Crawford* probably constitutes a novel issue of law, it is our opinion that that holding may not be invoked by a criminal defendant like Harris who has waived whatever confrontation rights might have been arguably available to him under *Crawford* by failing to object on one occasion and by himself offering the out-of-court statement at issue. *See State v. Rob-*

*inson,* 146 S.W.3d 469, 492 (Tenn.2004) ("While the defendant may very well be correct that both *Crawford* and Tennessee Rule of Evidence Rule 803(1.1) bar hearsay statements of identification if the declarant does not testify at trial, neither *Crawford* nor Rule 803(1.1) is dispositive in this case because the defendant himself both elicited and opened the door to the testimony he now assigns as error."); *see also State v. Lynch,* 854 A.2d 1022, 1052–53 (R.I.2004) (Flanders, J., concurring). We need not and therefore do not decide whether the statement at issue here was "testimonial" as that term was used by the United States Supreme Court in *Crawford.* We note, however, that the meaning of that term will one day have to be more precisely defined by the courts. *See Crawford,* 124 S.Ct. at 1374 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' ") (Footnote omitted).

**13.** This provision of the Rules of Evidence is consistent with the uncodified rules of evidence (and with the long-standing procedures and practices of this Court) with which Rhode Island practitioners were familiar before the adoption of the Rules in 1987. *See, e.g., State v. Mack,* 446 A.2d 766, 768–69 (R.I.1982)

fendant may not complain of testimony on appeal when such testimony was brought out by defendant himself or herself on cross-examination. *State v. DeWolfe*, 121 R.I. 676, 683 n. 5, 402 A.2d 740, 744 n. 5 (1979) (holding that defendant may not complain on appeal of testimony about his previous drug activities when such evidence was either brought out by defendant on direct examination, or brought out by defendant on cross-examination); *see also United States v. Garcia–Morales*, 382 F.3d 12, 18 n. 1 (1st Cir.2004) (stating that the defendant cannot complain about a witness's responses to the defendant's own cross-examination questions); *Mills v. State*, 28 Md.App. 300, 345 A.2d 127, 134 (Spec.App.1975) (holding that "error cannot be asserted where the evidence whose admission constitutes the alleged error is elicited by appellant's counsel").

Having chosen to use Cassandra's statement in his cross-examination of both Officers Scully and Calouro, defendant waived any right that he arguably may have had under the Confrontation Clause with respect to that statement.

## 2. The Sufficiency of the Evidence.

Lastly, we turn to defendant's assertion that the trial justice erred in denying his motion to dismiss. That motion questioned the sufficiency of the evidence that the state had presented to support its case.

■ In a jury-waived criminal proceeding, a defendant may move to dismiss in order to challenge the legal sufficiency of the evidence. *State v. Silvia*, 798 A.2d 419, 424 (R.I.2002). In ruling on such a motion, the trial justice acts as the factfinder. *State v. McKone*, 673 A.2d 1068, 1072 (R.I.1996). In carrying out that task,

the trial justice is "required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party." *Id.* at 1072–73. The trial justice must deny the defendant's motion to dismiss if he or she concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt. *Id.* at 1073.

■ On appeal, this Court applies a deferential standard of review to a trial justice's ruling on this type of motion to dismiss. *Silvia*, 798 A.2d at 424. We will not reverse the findings of a "trial justice sitting without a jury unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *State v. Traficante*, 636 A.2d 692, 694 (R.I.1994).

■ We are required to review the record carefully to see if it in fact contains sufficient evidence to support the trial justice's conclusion. *See Mack*, 446 A.2d at 768. We have conducted such a review, and we are convinced that the record contains sufficient evidence to support the trial justice's finding that the defendant did assault Melody Eason with a dangerous weapon. The trial justice expressly found to be credible Cassandra's oral statement that she saw the defendant threatening Melody with knives, which statement she made to her grandmother and to the police. The trial justice further found that the statement made by Melody Eason indicating that the defendant had threatened her with knives (*see* footnote 5, *supra*) was more credible than her testimony at trial. Our review of the record

(holding that a defendant who did not object to the introduction of evidence during trial

waived any appellate rights as to that issue).

347

persuades us that the trial justice had an adequate basis for so finding.

For the aforementioned reasons, we affirm the defendant's conviction, and the papers may be returned to the Superior Court.