**Supreme Court**

No-2015-147-C.A.
(P2/08-3287A)

State                                    :

   v.                                    :

Elton G. Edwards.                        :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.                       :

Elton G. Edwards.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The defendant, Elton G. Edwards (defendant or Edwards), appeals a five-count criminal conviction obtained after a jury-waived trial. This matter came before the Supreme Court on September 28, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown. Thus, further argument or briefing is not required to decide this matter. For the reasons outlined below, the Superior Court's judgment is affirmed.

**I**

**Facts and Travel**

This appeal arises from a traffic stop on the evening of August 22, 2008. Two Providence police officers, Lt. (then Sgt.) Richard Fernandes and Officer John Reposa,[1] who were in the same police cruiser, stopped defendant at the intersection of Harold and Valley Streets in Providence. Beyond the stop itself, the parties present largely diverging factual

---

[1] Now deceased due to an unrelated incident, Officer Reposa did not testify during trial.

scenarios. As a result of the incident, on October 31, 2008, the state filed a five-count criminal information against defendant, charging him with felony assault on a police officer (count 1); simple assault on a police officer (count 2); resisting arrest (count 3); driving under the influence of alcohol (count 4); and obstructing a police officer (count 5). The defendant waived his jury-trial right. After a two-day bench trial, Edwards was convicted on all counts.

At trial, Lt. Fernandes testified that, at approximately 7:30 p.m. on August 22, 2008, while driving east on Valley Street in his police cruiser, he observed defendant's vehicle in the opposite lane traveling west. He also testified that defendant passed at least one other car and crossed the street's double yellow line, nearly striking the police cruiser. Lieutenant Fernandes turned around, activated his emergency lights and sirens, and stopped the vehicle. Lieutenant Fernandes exited the police cruiser and approached the driver's side of defendant's vehicle. Simultaneously, Officer Reposa approached the passenger's side. The defendant occupied the driver's seat; his girlfriend, Ms. Danika Rollins, sat in the front passenger seat; and Danika Rollins's aunt, Ms. Carol Rollins, occupied a back seat.[2]

Standing at the driver's side, Lt. Fernandes requested defendant's license, registration, and proof of insurance. Lieutenant Fernandes testified that an "extremely agitated" defendant responded, "F**k you. What are you stopping me for?" Further, he testified that Edwards told him to go f**k himself when he again asked for documentation. According to Lt. Fernandes, defendant slammed his arms against the vehicle's dashboard. He suspected Edwards was intoxicated as he smelled alcohol on his breath, observed bloodshot, watery eyes, and empty beer bottles throughout the vehicle. Despite Edwards's behavior, Lt. Fernandes recalled remaining calm, asking Edwards to exit his vehicle.

---

[2] The Court intends no disrespect, but to avoid confusion we will refer to Ms. Danika Rollins and Ms. Carol Rollins as Danika and Carol, respectively.

Lieutenant Fernandes stated that, although he could not recall whether he or Edwards opened the door, defendant removed his seat belt. According to Lt. Fernandes, upon exiting the vehicle, defendant instantly lunged at him. When Officer Reposa came around the car to assist Lt. Fernandes, defendant bit Officer Reposa's left middle finger. The officers struggled to bring defendant to the ground, attempting to secure him on his stomach and in handcuffs. Defying handcuffs, defendant hit his head on the pavement. The defendant and Officer Reposa exchanged punches, and Lt. Fernandes recalled defendant biting Officer Reposa's face underneath his left eye. The defendant resisted Officer Reposa's verbal commands to lie on his stomach.

Eventually, the officers pinned defendant down on his stomach, and both officers held him down. While Officer Reposa attempted to handcuff Edwards, defendant again bit him, this time on his forearm. The defendant continued to resist handcuffs, prompting Lt. Fernandes to spray Edwards in the face with "one short [pepper spray] blast." He further recalled that Officer Reposa retrieved his collapsible baton and struck Edwards's head several times. By this point, Danika and Carol exited the vehicle. Carol tried to pull both officers away from defendant. Danika yelled, but did not physically intervene.

Lieutenant Fernandes further testified that he eventually took Edwards into custody and placed him in the police cruiser until rescue arrived for hospital transport. The officers also arrested Carol. The rescue then transported defendant to Roger Williams Hospital, where Officer Reposa was also treated. Lieutenant Fernandes testified that he left the scene, reported to the police station, and contacted a certified Breathalyzer operator. At the police station, Lt. Fernandes completed his statement and, per protocol, filled out a use-of-force form. During trial, Lt. Fernandes testified to Officer Reposa's injuries, confirming a scrape on his elbow, and bite

marks below his left eye, on his middle finger, and on his forearm. Lieutenant Fernandes also noted that defendant bled from both his mouth and head.

Next, the state called Officer Michael Troia, a Providence Police Traffic Bureau officer trained in DUI enforcement. Officer Troia testified that at around 7:45 p.m. Lt. Fernandes called him to respond to Roger Williams Hospital because the police suspected that Edwards was intoxicated. Upon his arrival, Officer Troia noted that defendant displayed bloodshot, watery eyes, and he smelled of alcohol. The emergency-room nurse drew two blood vials from defendant. From the hospital, he met with a Bureau of Criminal Identification detective at the police station who secured the blood in a refrigerator. The following Monday, Officer Troia transported the blood to the Department of Health forensic lab. About two weeks later, Officer Troia received the blood test results, which he mailed to defendant's address.

The state then called Ms. Jennifer Finch, the Principal Forensic Scientist in the Department of Health's Toxicology Laboratory. Ms. Finch testified that she conducted Edwards's blood tests, which revealed an ethanol presence and a blood alcohol level of ninety-seven milligrams per deciliter (translating to a gram percent of .097 milligrams per 100 cubic centimeters of blood).

The defendant first called Danika Rollins, his girlfriend of eight years and the mother of his two children. She testified that, on the night of August 22, 2008, she rode in defendant's front passenger seat. She recalled traveling home with defendant and her aunt, Carol Rollins, after spending about an hour at a cookout. Danika said that defendant and Carol each had "a beer or two." She testified that she sat close to defendant and watched "everything that was going on." She could not recall the cookout's precise location but thought it was in Johnston.

Danika testified that Edwards passed another car while he drove down Valley Street. She noted that the police vehicle, traveling opposite them, turned around. Using his loudspeaker, an officer requested that defendant pull over, and defendant complied. Danika testified that a police officer approached the driver's side of defendant's vehicle and asked for defendant's registration. She recalled that Edwards asked why he was stopped; she also stated that Edwards reached into his glove compartment to retrieve his registration when "the cop swore at him." Specifically, she recalled that Lt. Fernandes asked, "Where is your f**king registration?" Danika stated that the first officer pulled Edwards from the vehicle to the ground and proceeded to beat him. She also testified that Officer Reposa came around the car "out of nowhere" and joined in beating defendant.

In her testimony, Danika said that Lt. Fernandes asked only for defendant's registration—not his license. She recalled that the officer beat defendant with a "black stick." While Edwards tried to block his face from the force, she and Carol approached, but she said that they retreated to avoid being pepper sprayed. Danika further recalled that, in addition to using a baton, one officer punched Edwards. Additional officers came to the scene, arrested defendant and Carol, and brought defendant to the hospital. She also testified that one officer told her to "get the f**k from over there," and called her a "n***er."

During cross-examination, Danika testified that Edwards passed the vehicle in front of him on the right. When asked how defendant almost hit the officer's vehicle if he passed on the right, she testified that at no point did Edwards pass a car on the left side.

Danika offered diverging statements regarding who removed defendant from the vehicle. At trial, she testified that the first officer, Lt. Fernandes, pulled Edwards out. In a prior statement given to the police, however, she said that the second officer, Officer Reposa, pulled defendant

from the vehicle. Danika then answered affirmatively to the question of whether one of the officers just started beating defendant.

Again pivoting away from her original testimony, Danika testified that rather than the officer swearing immediately, he first asked, "Where is your registration?" Danika also testified that a police officer (she could not recall which officer) arrested her aunt, Carol. She testified that the officers claimed that her aunt jumped on their backs, but she insisted that Carol minded her own business and merely stated, "Oh, you guys aren't supposed to do that."

Finally, defendant testified. He said that he left the cookout early because he and Danika needed to get home to care for their infant. The defendant testified that he had one or two beers at the party. He stated that the party was in Lincoln, Rhode Island.

According to defendant, he sped a bit on his drive home because he was agitated that Danika made him leave the cookout. On his way home, he noticed a set of traffic lights ahead, where a car was taking a right-hand turn. He went around the car, "and in front of [him] there was a police car." On cross-examination, defendant clarified that, as the car in front of him approached the turn, he "swerved past it," but he claimed that he neither entered another lane to pass the car nor nearly struck the police car. Traveling a short distance from the light, he noticed a police vehicle behind him. Initially, he thought that the police were after someone else, and he stopped with the impression that they would pass. However, when the officer used his loudspeaker, Edwards stopped his vehicle.

Edwards testified that the police officer approached his car and requested his registration, which he claimed that he handed to the officer. He also recalled that the officer told him his breath smelled of alcohol; Edwards told the officer he was coming from a cookout, where he drank a "little bit." Edwards said that he asked why he was pulled over, which prompted the

officer to say, "Give me your f**king registration." He replied, "You don't have to swear at me." Then, Edwards testified that the officer told him to exit the vehicle. According to defendant, while he was unbuckling his seat belt, the officer opened the car door, grabbed him, and threw him to the ground.

Contrary to Lt. Fernandes's testimony, defendant stated: "I was face down while he was beating me, telling me [to] put my hands on my back, and I couldn't do it. And the only thing I could do is put my hands on my forehead so I wouldn't get a severe injury after that." The defendant said that the police officer struck his head with his baton several times, causing multiple cuts. He testified that one of the officers stated, "Put your f**king hands on your back" and "Put your f**king hands on your back, you monkey. Where are you from? You're going to go back there today." Further, he testified that one of the officer's knees was on his back, while the officer punched his face, which gave him a black eye and knocked his tooth out. The defendant could not recall how many officers beat him up "[d]ue to the blood and the severity of hitting [him, he] couldn't remember anything at that moment."

The defendant denied biting Officer Reposa anywhere on his body. To support this claim, he asserted that, based on the size of his teeth, his bite would have taken off the officer's flesh. He testified that, because he was removed from the car and brought to the ground, he "didn't have a chance to do anything." He could not recall how long the officers beat him.

The defendant also claimed that he never struck any police officer that evening. He asserted that he respects police officers, citing a $50 donation he made to a police department en route to the cookout. He claimed that he gave the police money because they do a "very good job."

During cross-examination, defendant stated that he thought he was pulled over because of his cracked car windshield. He also stated that the police pepper sprayed him several times while he was on the ground. He testified that he believed Lt. Fernandes made the "monkey" comments, stating he should go back to the "forest [he] came from." Further, defendant, in his brief, claimed that the officers engaged in creative story telling at trial to conceal their excessive force.

The defendant testified that he was handcuffed, placed in the back of the police cruiser, and moved to the ambulance when it arrived. He stated that he did not consume any alcohol from the time the officers removed him from the vehicle until he was at the hospital. He did not deny, but could not recall, that Lt. Fernandes visited him in the rescue vehicle and read him his rights, claiming his severe beating impaired his concentration.

When asked whether he remembered getting to the hospital, Edwards said that he remembered a doctor or nurse requesting that he sign a paper, but he cited pain in his hand that prevented his signature. While he also recalled a nurse drawing blood, he insisted "[t]here was no officer at the hospital." When asked whether Officer Troia retrieved his blood sample from the hospital, he repeated twice, "Everything was premeditated." He could not recall the nurse's gender, nor could he recall what was done to his blood after it was drawn.

At the close of the bench trial, the trial justice found defendant guilty on all counts. He sentenced defendant on February 3, 2015. For count 1, the trial justice sentenced Edwards to two years at the Adult Correctional Institutions (ACI), with six months to serve and eighteen months suspended with probation. As to each other count, defendant received an additional year at the ACI, suspended with probation, to be served concurrently. Additionally, the trial justice

ordered Edwards to complete an anger-management course. The trial justice then stayed the sentence's execution, and defendant appealed.

## II

## Standard of Review

"Recognizing that credibility assessments are inherently the function of the trial court and not the appellate court," this Court affords great deference to a trial justice's credibility determinations when sitting without a jury. State v. Van Dongen, 132 A.3d 1070, 1076 (R.I. 2016). "[We] will not disturb the trial justice's findings unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue." Id. (quoting State v. Adewumi, 966 A.2d 1217, 1222 (R.I. 2009)). "When 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached.'" Id. (quoting South County Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210 (R.I. 2015)).

## III

## Discussion

The dispute here arises from two largely diverging recollections surrounding a traffic stop. Careful scrutiny of the record demonstrates that the trial justice's findings rested on his thorough review of the evidence and his firsthand impression of the witnesses. Even if we can imagine a well-reasoned yet contrary conclusion, it is not the province of this Court to reject or replace the trial justice's findings when justified by sufficient evidence.

The defendant argues that the trial justice misconceived and overlooked material evidence and "was otherwise clearly wrong in his decisions." Because the testimony each side presented diverges significantly, the trial justice's guilt assessment turned on his impression of

witness credibility. Rather than misconceive or overlook evidence, the trial justice duly considered—and rejected—certain testimony, while he considered—and accepted—other evidence. "It is well-established that we 'accord a great deal of respect to the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record.'" Van Dongen, 132 A.3d at 1076 (quoting State v. Erminelli, 991 A.2d 1064, 1069 (R.I. 2010)).

For example, in accepting Lt. Fernandes's testimony, the trial justice noted: "[H]e was calm. He did not appear to be arrogant or contemptuous. He was not evasive, especially when he couldn't remember who opened the door. He was not argumentative, and he answered the prosecutor's questions directly." He further observed: "Lieutenant Fernandes did not add or embellish his testimony. His tone and his voice were always civil. Lieutenant Fernandes * * * presented at least a plausible version of events."

In contrast, in recalling the defense witnesses' testimony, the trial justice noted, "[Danika's and defendant's] version of the events, while not identical, differed a little bit, but I am aware that Danika had at least a couple of versions of her story * * * ." She offered conflicting statements regarding whether Officer Reposa or Lt. Fernandes removed defendant from his vehicle. With respect to how Danika reacted when confronted with an inconsistent statement, the trial justice said that he "watched as the witness became increasingly * * * less responsive." The trial justice further noted that defendant's testimony that he did not bite Officer Reposa anywhere on his body was "at odds" with photographs, medical records, and Lt. Fernandes's testimony. Finally, he found defendant's .097 percent blood alcohol level

inconsistent with defendant consuming "one or two beers." After an examination of all of the evidence, the trial justice rejected the testimony of defendant and Danika.

Importantly, the trial justice's rejection of defendant's and Danika's testimony following a thorough review of the evidence is not akin to misconception or oversight. Rather than point to specific evidence which the trial justice overlooked, defendant takes issue with the trial justice's interpretation of the evidence before him. The defendant asserts: "Common sense and a careful examination of Mr. Edwards' [sic] and Ms. Rollins' [sic] activities before the traffic stop indicate a far more likely version of events: namely, that Detective Fernandes' [sic] took umbrage at Mr. Edwards demanding to know why he had been stopped, that the detective then became upset, that either he or Officer Reposa then pulled Mr. Edwards from the car and assaulted Mr. Edwards, causing serious injury to Mr. Edwards by striking him on the head with a police asp." However, defendant mischaracterizes the standard by which we review this case. Rather than scrutinize the record below through the lens of whether "a far more likely version of events" emerges, we are obligated to affirm the trial justice's findings if grounded in competent evidence. See Van Dongen, 132 A.3d at 1076.

The defendant cites precedent to remind this Court that we must "not simply * * * rubber-stamp the trial justice's findings of fact; rather, our role is 'to review the record carefully to see if it in fact contains sufficient evidence to support the trial justice's conclusion.'" State v. Forand, 958 A.2d 134, 138 (R.I. 2008) (quoting State v. Harris, 871 A.2d 341, 346 (R.I. 2005)). Careful scrutiny of the record demonstrates a well-reasoned decision supported by sufficient evidence; indeed, no rubber-stamp is necessary.

More specifically, in count 1, the trial justice found defendant guilty of felony assault of a police officer (G.L. 1956 § 11-5-5), relying on Lt. Fernandes's testimony. Lieutenant Fernandes

- 11 -

testified that when he asked for a license, registration, and proof of insurance, defendant swore at him. He found that defendant then removed his seat belt, exited the vehicle, and jumped on top of Lt. Fernandes. When Officer Reposa walked around the car, a scuffle occurred, leading defendant to eventually bite Officer Reposa in three different areas. The trial justice reviewed hospital records and photographs evidencing these bite marks, which he referred to as showing "unquestionable" injury.

Similarly, the trial justice's guilt finding for simple assault or battery (§ 11-5-3), count 2, rested on sufficient competent and credible evidence. Here, he accepted Lt. Fernandes's testimony that defendant jumped out of his car and on top of him, which suffices to satisfy the element of an offensive touching upon another's body.

Further, sufficient evidence supported the trial justice's finding that defendant resisted arrest (G.L. 1956 § 12-7-10). In finding defendant guilty, the trial justice recalled evidence from Lt. Fernandes's testimony that a scuffle occurred when the officers attempted to handcuff defendant. Lieutenant Fernandes testified at length regarding his and Officer Reposa's attempt to get defendant on his stomach to complete the arrest, where he actively combatted the officer's efforts. This evidence fulfills the elements of resisting arrest.

The trial justice also grounded his guilt finding for driving under the influence of alcohol (G.L. 1956 § 31-27-2) on sufficient, competent evidence. First, the trial justice recalled defendant's and Danika's testimony that, when stopped, they were traveling from a party where defendant drank alcohol. Lieutenant Fernandes spotted defendant driving on Valley Street, a public street in Rhode Island. Lieutenant Fernandes testified that he smelled alcohol on defendant's breath, and observed bloodshot eyes and slurred speech. Also, the trial justice considered evidence that the rescue transported defendant to Roger Williams Hospital, where

blood was drawn. The blood alcohol test revealed an alcohol content of .097 grams per deciliters (.097 percent), which exceeded the .08 percent minimum statutory amount. This evidence sufficed to justify the trial justice's guilt finding for driving under the influence beyond a reasonable doubt.

Finally, the evidence in this case adequately supports the trial justice's finding that defendant obstructed officers in executing their duty (G.L. 1956 § 11-32-1). Lieutenant Fernandes testified that defendant defied the officers' authority and used every effort to avoid handcuffs. Lieutenant Fernandes testified that Officer Reposa came to his assistance and as a result of defendant's actions, a scuffle occurred where punches were thrown and force was exchanged.

Accordingly, a thorough review of the record reveals that sufficient credible and competent evidence supports the trial justice's guilt determinations on all counts beyond a reasonable doubt. The trial justice did not overlook or misconceive any material evidence in reaching his decision.

**IV**

**Conclusion**

For the aforementioned reasons, the Superior Court's judgment is affirmed. The record may be returned to that tribunal.



RHODE ISLAND SUPREME COURT CLERK'S
OFFICE


*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          State v. Elton G. Edwards.

**CASE NO:**               No. 2015-147-C.A.
                          (P2/08-3287A)

**COURT:**                 Supreme Court

**DATE OPINION FILED:**    October 27, 2016

**JUSTICES:**              Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**            Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                          Associate Justice William E. Carnes, Jr.

**ATTORNEYS ON APPEAL:**

                          For State:   Christopher R. Bush
                                       Department of Attorney General

                          For Defendant:  Lara E. Montecalvo
                                          Office of the Public Defender