[Crim. No. 393.   Fourth Appellate District.—February 19, 1940.]

THE PEOPLE, Respondent, v. CARMI D. MILES, Appellant.

Charles J. O'Connor for Appellant.

Earl Warren, Attorney-General, and Burdette J. Daniels, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Appellant in this action was prosecuted by the district attorney of San Bernardino County on an information filed July 10, 1939, charging grand theft under section 484 of the Penal Code, as follows: that on the 26th day of January, 1937, in the said county of San Bernardino, State of California, he did "wilfully, unlawfully and feloniously take the personal property of the State of California, to-wit: the sum of $235.67 . . . ". After a plea of not guilty and a trial by a jury, a verdict of guilty with recommendation for leniency was rendered. A motion for new trial was ordered denied, as was a motion in arrest of judgment. Application for probation was denied and appellant was thereafter sentenced to the state prison. Appellant has appealed from the above-mentioned orders and from the judgment of conviction.

Stripped of unnecessary minutiae, the facts may be thus summarized: Appellant, on January 26, 1937, went to the office of the State Relief Administration of California and filed his application for relief. At that time he was the head of a family consisting of himself, his wife and six children. He was purchasing a home, with an indebtedness of $2,300 against it. Due to loss of employment at various times over a period of years, he was indebted for doctor bills and grocery bills. His skill as a wage earner was in the operation of a steam shovel. This employment paid a high hourly rate. He was attached to a contracting firm and when it had work needing his skill he was employed for the number of hours, days or weeks it required to complete the task. Then he was unemployed until his employer secured some new contract.

The application form consisted of a number of printed statements of facts with blanks to be filled in by the applicant. Among them, the following are challenged as to their accuracy. First, "The name of my employer for whom I worked longest is—*Geo. Herz & Co.*" Second, "I have been unemployed since—*Dec. 1936.*" Third, "I am employable at this time—*Yes.*" The part italicized contains the information furnished by the appellant. Appellant talked to an employee at the State Relief Administration headquarters and presented the application and signed it in the presence of a Mrs. Hazel Elliott, who read over each of the statements

contained in the entire application and had the application signed in her presence and she signed as a witness.

The claim of false pretense was that the answers conveyed the impression that appellant was not presently employed by Geo. Herz & Co.; that appellant was not employed during January, 1937; that appellant was employable on the date of the application. After the filing of the application for relief appellant received from the State Relief Administration for the period from January 26, 1937, until April 20, 1937, the sum of $235.67, which was paid on the dates and in the amounts as follows: February 15, 1937, $47.31; February 15, 1937, $2.81; February 19, 1937, $35.11; March 2, 1937, $37.61; March 7, 1937, $37.61; April 2, 1937, $37.61; and on April 17, 1937, $37.61.

For a period of time, approximately five years, prior to the date of the criminal charges herein involved, appellant was employed off and on as a shovel operator, and during said period of time and at the time he made his application for unemployment relief, he was receiving a government pension in the sum of $10 per month. The evidence further shows that appellant had been paid by Herz & Co. for labor performed during the month of January, 1937, the sum of $80.49; for the month of February, $95.66; for the month of March, $129.34; and for the month of April, $198.42, making a total of $503.91, in addition to the pension of $10 per month.

According to the evidence in the record, appellant did not personally report to the State Relief Administration the fact that he was part time gainfully employed in private industry until he called for his check either "the last one" or "next to the last one", when he notified the paymaster's office that he was working pretty steady and that he "may not be entitled to the check". He testified that they answered him that "if it wasn't mine it would not be made out to me". This testimony stands uncontradicted in the record.

Appellant testified that at the time the application was filed he was told by the recipient of the application that there would be further investigation of the representations made and that he would be called upon by a home worker and case aid; that thereafter a Mr. Melvyn, a case aid, called; that appellant did not talk to him but his wife did. Mrs. Miles, on the witness stand, was asked to detail the conversation with Mr. Melvyn. An objection by the district attorney to this

conversation was sustained by the trial court. Appellant thereafter made an offer to prove that his wife told Mr. Melvyn of the sickness of their two children, of her husband's illness and hospitalization, of the expenses of that illness amounting to more than $300; *that she told Mr. Melvyn that her husband was working; that he had part time employment, but that the amount received from his employment was not nearly enough to support them;* that she had supplemented the amount of their earnings by working as a chambermaid in the hospital to help pay the bills incurred there. The objection to the offer of proof was sustained. The portions italicized were clearly admissible. She did later testify, however, that Mr. Melvyn discussed the matter of her husband's employment with her and that he replied that he was glad her husband had part time employment; that if her husband got steady employment to let him know, which she said she did. Mr. Melvyn, although in court, did not deny this statement. A like offer of proof was made by appellant that he had talked with an intake officer of the commission at the time he filed the application; that he told her that he was having part time employment but that the amount received was not sufficient to support his family and pay their bills. The evidence as to what appellant said to her was ruled inadmissible, and that which Mrs. Elliott, the intake officer, said to appellant respecting his employment when she took the original application was held admissible. This entire conversation was clearly admissible. However, appellant was later permitted to testify that at the time the application was filled out Mrs. Elliott explained to him that even though he was working part time he was still eligible for relief. On rebuttal she denied that she had made any such statement. Mrs. Elliott further testified that she stated to Mr. Miles that "if at any time his condition would change that that would be his responsibility to explain the change"; that she meant by *his condition* that "if he received more than he stated at the time of the application or if he became more in need, for additional members of the family, any change in the condition that he had stated was his, that he would have to explain that, that was his responsibility to notify us".

It is therefore quite apparent that the testimony of Mrs. Miles pertaining to her conversation with Mr. Melvyn when he called to verify the information given by appellant,

wherein he was informed that her husband was working part time, was admissible for the purpose of showing whether the relief administrator relied upon the written information given in the application or upon other representations or upon independent investigation of his own, in making the payments above mentioned. (*People* v. *Daniels,* 64 Cal. App. 514 [222 Pac. 387]; *People* v. *Ward,* 145 Cal. 736 [79 Pac. 448]; *People* v. *Hong Quin Moon,* 92 Cal. 41 [27 Pac. 1096]; *People* v. *Steffner,* 67 Cal. App. 1, 13 [227 Pac. 690]; *State* v. *Bingham,* 51 Wash. 616 [99 Pac. 735]; *People* v. *Talbot,* 220 Cal. 3 [28 Pac. (2d) 1057].)

■ This same rule applies to the conversation claimed to have taken place between appellant and Mrs. Elliott at the time the application was made, and particularly so where appellant was charged under section 484 of the Penal Code, rather than under section 530a of the Penal Code. Great latitude should have been allowed in admitting the entire conversation giving rise to the claimed false statements. It was therefore error for the trial court to refuse to admit this evidence. The evidence is uncontradicted that appellant notified the relief administration before the last payment of $37.61 was appropriated by him, that he was at least part time employed.

■ Assuming but not holding, according to respondent's argument, that the transaction comprised successive acts of taking under a single felonious impulse and that it therefore constituted but one theft, the uncontradicted evidence indicates that the sum of $37.61, the last payment, was deductible from the principal sum of $235.67 charged in the information, if it was obtained after appellant had duly notified the relief administration that he was employed. If after such notice he was allowed to appropriate this sum of $37.61 under a new and different representation it would accordingly reduce the amount obtained under the claimed original false representation to an amount less than $200 and would therefore constitute only a misdemeanor. (Secs. 487 and 488, Pen. Code.)

■ The authorities of this state hold that under the charge of theft in obtaining money by false pretenses, where the property was taken at different times and was different in character and value, even though obtained upon the same

false representation, separate crimes have been committed and are completed on the days when the defendant takes possession of and appropriates the property described. (*People* v. *Rabe,* 202 Cal. 409 [261 Pac. 303] ; *People* v. *Ellison,* 26 Cal. App. (2d) 496 [79 Pac. (2d) 732] ; *People* v. *Coyle,* 134 Cal. App. 612 [25 Pac. (2d) 991].)

In *People* v. *Rabe, supra,* which cannot be distinguished from the instant case, it was said:

"The intent to obtain property by false or fraudulent means is shown by the plan devised by the person contemplating the offense, but the crime is not complete until such person obtains possession of the property of the other as a result of fraudulent representations. In other words, the crime is accomplished when an accused receives into his possession property which he had planned to fraudulently gain. So in the instant case, while a general intent to defraud may have been formed in the mind of the accused at the time of or before he completed the first offense, the other crimes charged were completed as separate and distinct offenses on the days that he unlawfully took possession of the property described in the several counts of the indictment. If appellant's theory be correct and the value of the property first acquired had been under $200 the appellant could have been put to his trial for a misdemeanor only, and other subsequent offenses would have been merged into the misdemeanor prosecution. . . . It is the act of getting possession of or of obtaining property by false and fraudulent representations which the law punishes as a crime."

In *People* v. *Ellison, supra,* it was held:

"The obtaining of three sums on different dates constituted three separate acts. The fact that the three sums were obtained from the same party and on the same representations does not reduce the three separate acts to one act. Appellant had the fraudulent intent to obtain property by false representations, and the obtaining of the property on the first occasion under the inducement of false representations constituted a complete crime. When at a later date other property was obtained under the influence of the fraudulent representations which had earlier been made a separate offense was committed."

It cannot therefore be said, considering the evidence erroneously excluded and the facts related, that the instant case comes within the rule laid down and as applied to the facts in the case of *People* v. *Dillon,* 1 Cal. App. (2d) 224 [36 Pac. (2d) 416], *People* v. *Bratton,* 125 Cal. App. 337 [14 Pac. (2d) 125], and *People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865], to the effect that a transaction comprising successive acts of taking under a single felonious impulse constitutes but one theft.

Incidentally, it appears from the record that appellant received a letter from the Department of Finance at Sacramento dated May 31, 1939, stating that a "balance of $212.53 was owed by you on account of certain relief overpayments". It also appears from the record that in May, 1937, appellant signed an agreement to repay this amount at the rate of $15 a month, and it further shows that $25 was subsequently repaid to the state by appellant and such payments were made prior to the filing of the information.

■ We are impelled to hold that under the circumstances the errors complained of were prejudicial and that the appellant was erroneously convicted of a felony under section 484 of the Penal Code and that section 4½, article VI, of the Constitution is not applicable.

■ Incidentally, although partial restitution or an agreement to reimburse is not a ground of defense but only authorizes the court to mitigate punishment in its discretion, it appears from the record that appellant received a letter from the Department of Finance at Sacramento dated May 31, 1939, stating that a "balance of $212.53 was owed by you on account of certain relief overpayments". It also appears from the record that in May, 1937, appellant signed an agreement to repay this amount at the rate of $15 a month, and it further shows that $25 was subsequently repaid to the state by appellant and such payments were made prior to the filing of the information. (Sec. 513, Pen. Code; *People* v. *Hand,* 127 Cal. App. 484 [16 Pac. (2d) 156].)

■ The order denying the motion in arrest of judgment not being appealable, is dismissed. (*People* v. *Pettinger,* 94 Cal. App. 297 [271 Pac. 132]; *People* v. *Martin,* 188 Cal. 281 [205 Pac. 121, 21 A. L. R. 1399].) Respondent's motion for diminution of the record is granted and the reporter's tran-

script is corrected accordingly. For the reasons stated, the order denying appellant's motion for new trial and the judgment from which this appeal has been perfected are reversed.

Barnard, P. J., and Marks, J., concurred.