358 A.2d 46.

STATE vs. ANTHONY AURGEMMA.

MAY 27, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

JOSLIN, J. The defendant was tried and convicted in a nonjury trial in the Superior Court on three counts of a five count indictment charging him with obtaining money from another by means of false pretenses in violation of G. L. 1956 (1969 Reenactment) §11-41-4.[1] The case is here on the defendant's appeal.

For our recitation of the material facts, we draw primarily upon the trial justice's factual determinations. As viewed by him the record discloses that Charles St. Peter met defendant at a lumber yard in June 1970. St. Peter had just purchased two sheets of paneling in order "to do a little do-it-yourself work" at his home and was having difficulty loading his purchases in his automobile. At that point defendant volunteered to deliver the paneling and St. Peter accepted his offer. When they reached their destination, defendant, who had been engaged in the home repair and improvement business for more than 15 years, told St. Peter what his business was and also advised that he was a sheriff or constable as well as a member of the Better Business Bureau. They then entered into an agreement calling for defendant to remodel a bedroom and the kitchen of St. Peter's home. Work was to start in a few

---

[1] General Laws 1956 (1969 Reenactment) §11-41-4 reads as follows:

"Every person who shall obtain from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud, and every person who shall personate another or who shall falsely represent himself to be the agent or servant of another, and shall thereby receive any money or other property intended to be delivered to the person so personated, or to the alleged principal or master of such agent or servant, shall be deemed guilty of larceny."

days and the agreed price was $1,450 of which $500 was then paid and another $500 several days thereafter while work on the bedroom was proceeding. Following completion of the bedroom defendant told St. Peter he was going to Connecticut where he anticipated making a "good buy" on paneling and doors, and he offered to remodel several other rooms for the additional price of $800. His offer was accepted, and the $800 was subsequently paid. St. Peter also paid $45 for a kitchen sink which defendant agreed to purchase for him.

During June or early July the work on one bedroom was completed, several doors were hung, and the kitchen was ripped out to the bare walls. In addition, some kitchen materials were delivered to the job site, but were removed when St. Peter insisted that they were not of the kind and quality called for by the agreement. Thereafter, all work on the job came to a halt and St. Peter's repeated attempts to get defendant to resume work and to complete his undertakings were of no avail. Finally, he consulted an attorney who wrote to defendant on August 21, 1970 accusing him of abandoning the contract and threatening legal proceedings unless appropriate financial adjustments were promptly forthcoming. When this demand was not satisfied civil proceedings were commenced.

The defendant, who disputed St. Peter's testimony in part, attributed his failure to complete the job to labor and financial problems, and to the letter from St. Peter's attorney which he interpreted as advising him not to continue working on the house.

To the extent that the state's and defendant's evidence differs, the trial justice found the former more credible and he concluded that the state had proved beyond a reasonable doubt that defendant "* * * willfully, knowingly and with an intent to defraud, falsely represented his capacity to accomplish the work that he had agreed

to do for Charles St. Peter, that he had no intention of performing his agreement with Charles St. Peter, and that Mr. St. Peter was induced to rely, and did rely, on the representations of the defendant, and paid the defendant $1,800 to his, Mr. St. Peter's loss." He further found by a like quantum of proof that defendant "* * * by false pretenses, and with the intent to cheat and defraud, did unlawfully and knowingly obtain and steal from Charles St. Peter the sum of $1,845, wherefore, he is guilty of larceny in violation of Section 11-41-4 of the General Laws as charged in Count I of the indictment."

Although different incidents gave rise to Counts II and III, we need not discuss them inasmuch as the proof with respect to all three counts is substantially identical. Hence, what we now say and decide with respect to Count I, excepting only as may be otherwise specified, applies equally to Counts II and III.

As good a starting point as any for our discussion of defendant's several specifications of error is with his contention that a conviction for obtaining property by false pretenses hinges on the actual loss suffered by the victim, rather than on the amount of money paid or the worth of the property transferred, and that consequently the state's failure to offer any evidence that the value of the work left undone by him exceeded $500 precluded a felony conviction.[2] The short answer to this contention is that the crime is committed at the moment the victim is

---

[2] In pertinent portions G. L. 1956 (1969 Reenactment) §§11-1-2 and 11-41-5 read as follows:

"11-1-2. Felony and misdemeanor distinguished.—Unless otherwise provided, any criminal offense which at any given time may be punished by imprisonment for a term of more than one (1) year, or by a fine of more than five hundred dollars ($500), is hereby declared to be a felony; and any criminal offense which may be otherwise punishable is hereby declared to be a misdemeanor.

"11-41-5. Penalties for larceny.—Any person convicted of any offense

fraudulently induced to part with his money or property. It is the amount of that money or the worth of that property that is pivotal, and the extent of a victim's ultimate loss is immaterial on the issue of the degree of the offense charged. *LaMoyne v. State,* 53 Tex. Crim. 221, 111 S.W. 950 (1908). Moreover, even proof that a victim has suffered no loss whatsoever or that the money fraudulently obtained has been repaid will not suffice as a defense. *State v. Mills,* 96 Ariz. 377, 379-82, 396 P.2d 5, 7-8 (1964); *Stewart v. State,* 256 Ark. 619, 509 S.W.2d 298 (1974); *People v. Brady,* 275 Cal. App.2d 984, 994-95, 80 Cal. Rptr. 418, 424 (Ct. App. 1969). Accordingly, the state was not burdened in this case with establishing the value of the work left undone by defendant.

The defendant also urges upon us the view that to constitute a false pretense under statutes comparable to §11-41-4, the misrepresentation must relate to a past or existing fact or event and that a present intention not to perform some promised act will not suffice. But that approach, although widely followed,[3] is at odds with *State*

---

under §§11-41-1 to 11-41-6, inclusive, if the value of the property or money * * * obtained, received, taken or secreted by false pretenses or otherwise with intent to cheat or defraud * * * exceed five hundred dollars ($500), shall be punished by imprisonment for not more than five (5) years, or by a fine of not more than one thousand dollars ($1,000), or by both, or if the value of such property or money does not exceed five hundred dollars ($500), such person shall be punished by imprisonment for not more than one (1) year, or by a fine of not more than five hundred dollars ($500), or by both."

[3]The authorities are collected at *Annot.,* 168 A.L.R. 833 (1947). In *People v. Ashley,* 42 Cal.2d 246, 267 P.2d 271, *cert. denied,* 348 U. S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954), Justice Traynor, writing for the majority in a learned and extensive analysis of the problem, traced the development of this rule. He examined the early English case of *Rex v. Goodhall,* Russ. & Ry. 461 (1821), and the Massachusetts case of *Commonwealth v. Drew,* 36 Mass. (19 Pick.) 179, 185 (1837), both of which he felt to be ill-founded decisions. He continued: "On the basis of these two questionable decisions, Wharton formulated the following generalization: '* * *

v. *McMahon,* 49 R. I. 107, 140 A. 359 (1928), where we said:

> "This State is committed to the doctrine that in an action for deceit intention not to meet a future obligation is a question of fact to be submitted to the jury and that misrepresentation of a present state of mind as to such intention is a false representation of an existing fact. (citations omitted) The rule is equally applicable in this criminal prosecution for cheating." *Id.* at 108-09, 140 A. at 360.

Thus, the rule in this state is that a misrepresentation with regard to a *future transaction,* no less than one relating to an *existing fact,* is a false pretense within the meaning of §11-41-4.

If we were in error in thus construing the legislative intent underlying §11-41-4's precursor, it would not be unreasonable to believe that the Legislature in the almost half a century which has passed since *McMahon* was decided would in all probability have corrected that error by amending the law so as to leave no doubt that it had no intention of criminalizing a fraudulent promise to act in the future. Its failure to do so justifies us in now assuming that whatever other Legislatures may have intended in adopting comparable legislation, ours by its silence has approved of the construction which its enactment received in *McMahon. See Woonsocket Hosp.* v. *Lagace,* 113 R. I. 95, 102, 318 A.2d 472, 477 (1974); *Coletta* v. *State,* 106 R. I. 764, 771, 263 A.2d 681, 685 (1970); *Santanelli v. City of Providence,* 105 R. I. 208, 212, 250 A.2d 849, 851 (1969);

---

the false pretense to be within the statute, must relate to a state of things averred to be at the time existing, and not to a state of things thereafter to exist.' (Wharton, American Criminal Law 542 [1st ed., 1846].) This generalization has been followed in the majority of American cases, almost all of which can be traced to reliance on Wharton or the two cases mentioned above." *People* v. *Ashley, supra* at 260, 267 P. 2d at 280. For an exposition favoring the majority rule *see Chaplin* v. *United States,* 157 F.2d 697 (D.C. Cir. 1946).

*Order of St. Benedict* v. *Town Council,* 84 R. I. 503, 507, 125 A.2d 150, 152 (1956).

A further assignment of error relates to the testimony that at about the time of the offense charged defendant obtained money from other persons by means of fraudulent representations similar to those allegedly used here. The defendant does not challenge the general principle permitting that kind of evidence for the limited purpose of showing that the acts charged are part of a general felonious scheme and of aiding in the establishment of a fraudulent intent, *State v. Mastracchio,* 112 R. I. 487, 493, 312 A.2d 190, 194 (1973); *State* v. *Mancini,* 108 R. I. 261, 266-67, 274 A.2d 742, 745 (1971); *State* v. *Mazzarella,* 103 R. I. 253, 257, 236 A.2d 446, 449 (1967). He argues, however, that this rule is inapplicable here upon two grounds.

The first of those grounds is that such evidence qualifies for admission under the rule only if it is of a "prior criminal activity." But we have not so limited application of the rule. For example, we have permitted evidence of other acts, even if no criminal offenses were charged, as long as those acts were so similar in character and so closely related in their circumstances to those with which the defendant was charged that they plainly tended to establish a general fraudulent scheme. Thus, in *State* v. *Colangelo,* 55 R. I. 170, 179 A. 147 (1935), in responding to the accused's claim that the trial court erred in permitting the state to introduce evidence of immoral sexual conduct by the defendant to show a pattern of false representations, we said:

> "While it is the rule that in the trial of a criminal offense evidence of other and distinct criminal acts is generally prejudicial and inadmissible, yet it is generally conceded that evidence of other acts, representations and conduct at different times, even of a criminal nature, may be received when they are inter-

woven with the offense for which the defendant is being tried, or directly support a finding of guilty knowledge in the perpetration of that offense. Any circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority." Id. at 173-74, 179 A. at 149; *accord, State* v. *Peters,* 86 R. I. 447, 450, 136 A.2d 620, 621 (1957).

For his second ground defendant relies again upon the state's failure to produce evidence of the value of the work left undone. He contends that such proof was essential to the state's case and that without it the state was unable to satisfy what he terms the requirement that every element necessary to constitute the offense charged be proved before evidence of similar acts can be admitted. That requirement, if indeed there is one, is of no assistance to defendant in the present circumstances. This is so because, as already indicated, proof of ultimate financial loss by a victim of a fraudulent misrepresentation is not of the essence in a prosecution for obtaining property by false pretenses. *State* v. *Mills, supra; Stewart* v. *State, supra; People* v. *Brady, supra; LaMoyne* v. *State, supra.* Consequently, the absence of proof of the value of the work left undone by defendant was not a prerequisite in this case for permitting testimony of acts similar to the offense charged.

The defendant, relying principally upon 2 Wharton, *Criminal Law and Procedure* §584 at 311 (Anderson ed. 1957),[4] also argues that the two payments he received

---

[4] 2 Wharton, *Criminal Law and Procedure* §584 at 311 (Anderson ed. 1957), says:

"Each payment obtained by false pretenses is a separate offense. Accordingly, separate payments cannot be lumped together to make a total constituting a greater offense, even though all the payments were received by means of the same plan of false pretenses * * *."

with respect to Count III, neither of which exceeded $500, cannot be lumped together to provide the more than $500 requisite under §§11-1-2 and 11-41-5 for a felony conviction.[5]   The state counters, however, that Wharton's only authority for that principle is *People* v. *Miles,* 37 Cal. App.2d 373, 99 P.2d 551 (Dist. Ct. App. 1940), a case that was subsequently disapproved by the California Supreme Court in *People* v. *Bailey,* 55 Cal.2d 514, 360 P.2d 39, 11 Cal. Rptr. 543 (1961).   There the court, in an opinion with which we agree, held that a series of wrongful acts will constitute a single offense or multiple offenses depending upon the particular facts of the case.   If the evidence discloses "one intention, one general impulse, and one plan," there is but one offense, whereas separate and distinct intents will support multiple charges. *People* v. *Bailey, supra* at 519, 360 P.2d at 42, 11 Cal. Rptr. at 546; *accord, Commonwealth* v. *England,* 350 Mass. 83, 86-87, 213 N.E.2d 222, 224-25 (1966); *People* v. *Cox,* 286 N. Y. 137, 142-43, 36 N.E.2d 84, 86 (1941). *See also Annot.,* 53 A.L.R.3d 398 (1973).

Here, defendant has argued only that the receipts cannot be cumulated to constitute a single offense, and does not dispute that there was but a single plan.   We conclude, therefore, that it was not error for the trial justice to combine the two payments in order to find defendant guilty of a felony on Count III.

Finally, defendant argues that the trial justice overlooked or misconceived certain material evidence which, had it been considered, would have made reasonable the inference that at the time defendant obtained money from his victim he had the capacity as well as the intention to perform his agreement.   The evidence so viewed, defendant continues, even under the rule in *State* v. *McMahon, supra,* would have been insufficient to establish his guilt

---

[5]These statutes are set out in note 2 *supra.*

beyond a reasonable doubt or would at least have called for application of the reasonable hypothesis rule.[6] As instances of the material evidence he asserts was overlooked or misconceived, defendant calls our attention to the trial justice's failure to discuss the testimony that he had been engaged in the home repair business for almost 20 years; that in this case he did some of the work and delivered some of the materials to the job site; that during the time span when the acts here charged allegedly took place, he was satisfactorily completing jobs for other persons notwithstanding his then financial and labor difficulties; and that he failed to complete this job not because he lacked the capacity to do so, but because he received a lawyer's letter accusing him of having abandoned the job and demanding money damages from him.

---

[6]Under that rule, guilt, if it depends upon circumstantial evidence, requires that the facts and circumstances taken together be not only consistent with an hypothesis of guilt, but at the same time be inconsistent with any reasonable hypothesis of innocence. *State* v. *Wilbur,* 115 R. I. 7, 16, 339 A.2d 730, 735 (1975); *State* v. *Franklin,* 103 R. I. 715, 725, 241 A.2d 219, 225-26 (1968); *State* v. *Montella,* 88 R. I. 469, 476, 149 A.2d 919, 922-23 (1959); *State* v. *Blood,* 68 R. I. 160, 162, 26 A.2d 745, 746 (1942); *State* v. *Di Noi,* 59 R. I. 348, 368, 195 A. 497, 506 (1937). That rule, or some variation thereof, generally prevailed until 1954 when the Supreme Court, relying on the premise that circumstantial evidence intrinsically is no different from testimonial evidence, rejected it as both "confusing and incorrect" and held that the proper issue is simply whether all the evidence, be it direct or circumstantial, viewed in its entirety is sufficient to establish guilt beyond a reasonable doubt. *Holland* v. *United States,* 348 U. S. 121, 139-40, 75 S.Ct. 127, 137-38, 99 L.Ed. 150, 166-67 (1954). We alluded to the *Holland* case in *State* v. *Fortes,* 110 R. I. 406, 409 n.2, 293 A.2d 506, 508 n.2 (1972), and referred there to the substantial number of federal cases which have since followed *Holland.* We did this anticipating a request for a reexamination of our view. That anticipation has not been realized. Nonetheless, since *Fortes,* we decided *State* v. *Rose,* 112 R. I. 402, 407, 311 A.2d 281, 284 (1973), and *State* v. *Murphy,* 113 R. I. 565, 573, 323 A.2d 561, 565 (1974), in each of which we accepted the premise upon which *Holland, supra,* is based, and held that there is no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred.

436

It is these allegedly overlooked circumstances which defendant insists are material on the critical element of whether, within the contemplation of *State* v. *McMahon, supra,* he intended to perform at the time of his agreement with St. Peter. We test this contention by standards providing that a trial justice's decision in a nonjury civil or criminal trial, just like his decision on a motion for a new trial in a civil or criminal case, does not require an exhaustive analysis of the evidence or a specific statement of all the reasons for his conclusion. This is particularly true with respect to matters peripheral rather than central to the controlling issue in a case. Instead, it will suffice if the decision reasonably indicates that he exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses. *Shoor-Elias Glass Co.* v. *Raymond Constr. Co.,* 114 R. I. 714, 715-16, 339 A.2d 250, 252 (1975); *State* v. *Tate,* 109 R. I. 586, 588-89, 288 A.2d 494, 496 (1972); *Notarantonio* v. *Damiano Bros.,* 101 R. I. 173, 175, 221 A.2d 473, 474 (1966); *Chase* v. *Goyette,* 85 R. I. 469, 473, 133 A.2d 123, 125 (1957); *Hulton* v. *Phaneuf,* 85 R. I. 406, 416, 132 A.2d 85, 91 (1957).

While the trial justice's decision in this case did not specifically mention all the evidence referred to by defendant, he did mention some, and that not alluded to, when measured by the guidelines just referred to, was not of such a character as to deprive his factual determinations of the great weight they are entitled to receive. In these circumstances, and because the trial justice's decision is not otherwise clearly wrong or incorrect in law, we see *no reason to disturb it.*

For the reasons indicated, the defendant's appeal is denied and dismissed, the judgment of conviction is sustained, and the case is remanded to the Superior Court.

Motion to file petition for reargument out of time denied.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Taft & McSally, Bernard F. McSally,* for defendant.