**STATE**

v.

**Roger FORAND.**

**No. 2007–109–C.A.**

Supreme Court of Rhode Island.

Oct. 23, 2008.

Virginia M. McGinn, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Roger Forand, appeals from his November 10, 2006 judgment of conviction following a jury-waived trial in the Superior Court for Washington County with respect to two counts charging him with felony assault in violation of G.L. 1956 § 11–5–2 and interference with the use of a telephone in an emergency in violation of G.L. 1956 § 11–35–14. On the assault conviction, the defendant was sentenced to ten years imprisonment, three years to serve; on the conviction for obstructing the use of

a telephone, he was sentenced to ninety days, suspended.

This case came before the Supreme Court on September 23, 2008 pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having considered the record, the briefs filed by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

## Facts[1] and Travel

The complaining witness in this case is Jane,[2] the daughter of a former girlfriend of defendant, Roger Forand. Jane was nine years old at the time of trial.[3] She testified at trial that she and her mother had lived with defendant for about three months in his home in Westerly—an arrangement that came to an end upon the conclusion of defendant's relationship with her mother.

On December 23, 2005, a point in time when they were no longer living in defendant's home, Jane and her mother returned there to retrieve some personal items as well as their two cats. Jane testified that one of the cats had hidden under defendant's bed and that defendant began "moving stuff" in an attempt to flush the cat out into the open. Jane, fearful that defendant would injure the cat, "started screaming and crying." It is undisputed that, at that moment, Jane and defendant were standing on opposite sides of the "king-size" bed in defendant's bedroom.[4] Jane testified that defendant then picked up a boom box[5] from the floor, looked directly at her, and threw it at her head. She stated that she ducked and that the boom box struck her on her back.

Jane further testified (1) that her mother then went to the phone to call the police and (2) that she saw defendant rip the phone out of the wall. According to Jane, her mother then used her cell phone to place another call to the police and left the house. Jane added that she also left the house and that at some point defendant also came out and tossed her mother's car keys towards the nearby woods.[6] Jane recalled that the police arrived shortly thereafter and that they examined her back and took a picture of it. Jane further testified that she went to see a doctor several days later because her back was "still hurting."

Jane's mother, Hannah,[7] also testified for the state. Hannah testified that she was standing next to her daughter in defendant's bedroom when defendant "looked directly at Jane and threw [the boom box] right at her." Hannah recalled that Jane

---

1. The following facts were adduced from the testimony of the multiple witnesses who testified at trial.

2. We shall refer to the complaining witness pseudonymously throughout this opinion in order to protect her privacy.

3. Jane was eight years old at the time of the incident at issue.

4. A standard king-size bed is approximately seventy-six inches wide.

5. According to defendant's own testimony at trial, the boom box weighed approximately fourteen pounds and was made of hard plastic.

6. After defendant was arrested, the police found the car keys.

7. We shall refer to the mother of the complaining witness with a pseudonymous first name throughout this opinion. We intend no disrespect by this, but rather do so out of concern for her privacy and the privacy of her minor daughter.

ducked, but that the boom box nevertheless hit her on the back. Hannah further testified that she then ran to the phone in another room and called the police; she added that, after "a minute or two," defendant ripped the phone out of her hands and off the wall. She recalled that the police arrived shortly thereafter and inspected Jane's back. Hannah testified that she observed what she called "a big red mark" on Jane's back where the boom box had struck her. According to Hannah, she took her daughter to Westerly Hospital the next day, where she was advised to give her daughter Motrin for the swelling and bruising on her back.

The state's final witness was Matthew Hayden, a Westerly police officer. Officer Hayden was dispatched to defendant's house on December 23, 2005. He testified that he spoke to defendant outside the home and that defendant admitted to having ripped the phone out of the wall. Officer Hayden testified that, after speaking with defendant, he spoke with Jane and her mother and conducted an inspection of the home. He noticed a "large * * * boom box * * * on the ground" in the bedroom and a damaged phone on the floor in the kitchen. Officer Hayden also stated that there was "a small L-shaped red mark on * * * the upper left side of [Jane's] back," but he added that the mark was not visible in the photograph which he took at the scene. At that time, Officer Hayden decided to take defendant into custody, and he took a statement from Hannah. Although defendant initially denied throwing Hannah's car keys into the woods, Officer Hayden stated that he ultimately admitted to throwing the keys.

After the state presented its case, defendant moved to dismiss the charges against him. When defense counsel began to argue against the credibility of the state's witnesses, the trial justice stopped him and stated that credibility was not an issue on a motion to dismiss. The trial justice stated that, when dealing with such a motion, he was required to consider all the evidence in the light most favorable to the nonmoving party. Although defense counsel attempted to continue his argument as to credibility, the trial justice denied the motion to dismiss. The defense then proceeded to present its case.

The defendant opted to testify on his own behalf; he presented a version of the December 23 incident that was materially different from that presented by the prosecution. He testified that in actuality he threw the boom box onto the bed and not at Jane; he said that the boom box then rolled off the other side of the bed and struck Jane, who, he said, was on her hands and knees peering under the bed for her cat. He also testified that he was not looking at Jane when he threw the boom box, that he tried to warn her when he realized the boom box was heading towards her side of the bed, and that he had not intended to hit anyone. The defendant further testified that he immediately went over to Jane to see whether she had been injured. The defendant stated that he could hear Hannah "freaking out on the telephone" while talking to the police, whereupon he "went in and hit the wall and the phone fell off the wall." He further testified that the phone at issue regularly fell off the wall. The defendant admitted that he threw Hannah's car keys outside next to her car and that he later indicated to the police where they could be found. The state sought to impeach defendant's credibility by introducing evidence concerning his prior convictions for (1) driving while intoxicated in April of 2005, (2) domestic disorderly conduct in June

and July of 1999, and (3) violation of a no-contact order.

The trial justice found that defendant was not a credible witness, that the state's witnesses were credible, and that the state had "met its burden of proof beyond a reasonable doubt as to each and every element of Count 1 and Count [3] * * *." The trial justice did not believe either that defendant accidentally struck Jane with the boom box or that he inadvertently knocked the phone off the wall. Rather, he believed that defendant "was in a rage" and that he intentionally threw the boom box at Jane and later ripped the phone out of her mother's hands and off the wall. The trial justice also concluded that the boom box was a dangerous weapon. The trial justice noted that "while [the boom box] is not a dangerous weapon, *per se*," it was used in a way capable of inflicting serious bodily harm. The defendant was convicted of both charges.

## Standard of Review

■ In a jury-waived criminal proceeding, this Court gives deference to a trial justice's finding of facts. *State v. Harris*, 871 A.2d 341, 346 (R.I.2005); *Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I. 1998) (mem.). "[W]e will not reverse the findings of 'a trial justice sitting without a jury unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong.'" *State v. Silvia*, 798 A.2d 419, 424 (R.I.2002); see also *State v. Stierhoff*, 879 A.2d 425, 432 (R.I.2005). Although our standard of review is "deferential," *Barone*, 711 A.2d at 649, our role is not simply to rubber-stamp the trial justice's findings of fact; rather, our role is "to review the record carefully to see if it in fact contains sufficient evidence to support the trial justice's conclusion." *Harris*, 871 A.2d at 346.

## Analysis

### I

### Assault with a Dangerous Weapon

■ We first address defendant's argument that the trial justice erred in concluding that the boom box was a dangerous weapon. The defendant contends that there was insufficient evidence presented during the trial to prove that the boom box was used as a dangerous weapon.

■ While it is true that a boom box cannot properly be classified as a dangerous weapon *per se*, such an object (like many others) may become a dangerous weapon depending upon the manner of its use. *State v. Bolarinho*, 850 A.2d 907, 910 (R.I.2004) ("Although many objects, including knives and firearms, are inherently dangerous weapons, an assault with a dangerous weapon may arise when the object used in the assault is not *per se* a dangerous weapon if it appears that the object was used in such a way that it had the capability of producing serious bodily harm.") (internal quotation marks omitted). When an "object is employed in such a manner that serious bodily harm could have resulted, an assault with a dangerous weapon has been committed, whether or not injury occurs." *Id.*; see also *State v. Gore*, 820 A.2d 978, 980 (R.I.2003) (mem.); *State v. Froais*, 653 A.2d 735, 737 (R.I. 1995). The severity of the injuries suffered by the victim is not a determinative factor in determining whether an object was used as a dangerous weapon; as we have previously stated, "[t]he test is not whether serious bodily injury results from the assault, but whether the object was so used that serious bodily injury *may* have resulted." *Gore*, 820 A.2d at 980 (emphasis in original).

The defendant cites *State v. Ashness*, 461 A.2d 659 (R.I.1983), in support of his argument that, because the boom box was thrown from several feet away, it should

not be considered a dangerous weapon.[8] Relying on that case, he argues that the boom box should have been classified as a dangerous weapon only if he had struck her with it while holding it in his hands.

We do not view *Ashness* as being at all supportive of defendant's argument. In *Ashness*, this Court reaffirmed the requirement that, in order "to constitute an assault with a dangerous weapon, it is necessary that the weapon should be presented at the party intended to be assaulted, within the distance at which it may do execution." *Ashness*, 461 A.2d at 665 (quoting *State v. Baker*, 20 R.I. 275, 278, 38 A. 653, 654 (1897)).[9] The Court in that case went on to describe this element of the crime of assault with a dangerous weapon as "the actual present ability of the defendant to inflict harm on the victim * * *." *Ashness*, 461 A.2d at 665.

In our judgment, *Ashness* does not even remotely support defendant's argument on appeal. In *Ashness*, the defendant argued that he did not commit assault with a dangerous weapon because, although he was holding a gun during the robbery, he never pointed his weapon at the victim or placed him in fear of bodily harm. This Court noted that the defendant was standing within five feet of the victim and that, although the defendant never actually threatened the victim directly, the victim was certainly within range of the defendant's weapon. *See id.* The Court in

*Ashness* ruled that "there was sufficient evidence to support a conclusion that the gunman had the actual present ability to inflict bodily harm on [the victim]." *Id.* at 666.

In the instant case, the trial justice similarly determined that defendant had the present ability to inflict bodily harm on Jane. The defendant was capable of striking Jane, who the trial justice found was standing about six feet away from him, with the boom box; the trial justice found that he did, in fact, intentionally strike her. We perceive nothing in the record that would cause us to decide that the trial justice clearly erred in reaching his conclusions, and we note that those conclusions were based entirely on the evidence presented at the trial.

At the close of all the evidence, the trial justice weighed and evaluated the evidence presented by both sides, passed upon the credibility of the trial witnesses, and impartially engaged in the inferential process in the course of rendering his decision. The trial justice found that defendant was not a credible witness; he instead accepted the mutually consistent accounts[10] of Jane and her mother, both of whom testified that defendant looked directly at Jane before throwing the fourteen-pound, hard-plastic boom box directly at Jane's head from a distance of less than six feet. Although Jane was able to duck, the boom box nevertheless struck her back, leaving a

---

8. The defendant has also directed our attention to numerous decisions from courts in other jurisdictions dealing with the dangerous weapon issue. However, it is not necessary for us to give sustained attention to those cases in this instance where the law of this jurisdiction is clear, recent, and dispositive.

9. The fact that this Court's opinion in *State v. Baker*, 20 R.I. 275, 38 A. 653 (1897), was written more than a century ago undoubtedly explains why its language may today seem somewhat stilted. The language in question

was itself derived from Emlin McClain's treatise on criminal law. *See* 1 Emlin McClain, *A Treatise on the Criminal Law,* § 232 at 199 (1897).

10. As is so often the case when different witnesses recall their perceptions of a past event, Jane's testimony differed from that of her mother with respect to some minor points; what matters is that their accounts were in accord as to all material matters.

mark. The trial justice described Jane as being a "quite slight" young girl. There is no indication in the record that the trial justice overlooked or misconceived relevant and material evidence in determining that the boom box could have caused Jane serious bodily harm if it had struck her head as defendant intended. In view of the evidence in the record and the pertinent principles of law, we have no basis for ruling that the trial justice's conclusion was in clear error.

## II

### The Standards Applicable to a Motion to Dismiss in a Nonjury Trial

We next turn to defendant's contention that, when considering his motion to dismiss at the close of the prosecution's case, the trial justice erroneously applied standards that govern analysis of a motion for judgment of acquittal rather than the standards that are pertinent to a motion to dismiss. At oral argument, defense counsel conceded that this was not a viable ground for appeal, so we need not address the merits of defendant's contention.

Nevertheless, for the benefit of bench and bar, we avail ourselves of this opportunity to reiterate the distinction between a motion to dismiss and a motion for judgment of acquittal. Rule 29(b) of the Superior Court Rules of Criminal Procedure provides: "In a case tried without a jury, a motion to dismiss may be filed at the close of the state's case to challenge the legal sufficiency of the state's trial evidence." As this Court has previously noted, a motion to dismiss differs from a motion for a judgment of acquittal. *See, e.g., State v. Pineda,* 712 A.2d 858 (R.I.1998); *State v. McKone,* 673 A.2d 1068 (R.I.1996). The following passage from our decision in *McKone* concisely emphasizes the difference:

"Our long established trial procedure practice has been, and remains, that in jury-waived trials in this state, the appropriate motion by which a defendant may challenge the legal sufficiency of the state's trial evidence at the close of the state's case is by motion to dismiss. * * * The trial justice's obligations triggered by a motion for judgment of acquittal in a criminal *jury trial* case and by a motion to dismiss in a *nonjury* criminal trial are totally different from each other in both form and effect." *McKone,* 673 A.2d at 1072 (emphasis in original).

■■■■■ When a motion for judgment of acquittal is made in a criminal case tried to a jury, the trial justice is required

"to view and evaluate the nonmoving party's evidence in a light most favorable to the nonmoving party and against the moving party. On such a motion, the trial justice is not permitted to weigh the trial evidence or to pass upon the credibility of witnesses. Additionally the trial justice draws from the trial evidence all inferences favoring the nonmoving party and against the moving party. * * * [T]he trial justice is then only required to determine whether reasonable minds in a *jury* might conclude and decide the case issue or issues in favor of the nonmoving party. If the trial justice concludes that a jury might reasonably so find in favor of the nonmoving party, he or she is then required to deny the motion for judgment of acquittal and permit the case to go to the jury." *Id.* at 1072–73 (emphasis in original).

■■■■ By contrast, in a criminal case tried *without* a jury (such as the present case), the standards to be adhered to by the trial justice in evaluating a motion to dismiss differ markedly from those summarized in the preceding paragraph. In

fulfilling his or her role as the fact-finder, the trial justice must

> "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice * * * concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." *Id.*

## III

### Interference with Use of a Telephone

■ Finally, defendant contends that there was insufficient evidence produced at trial to prove that he was guilty of obstructing or damaging a telephone needed for an emergency call in violation of § 11–35–14. The defendant argues that there was no evidence that an emergency situation existed at the time Hannah called the police because no one was in danger of being killed or in need of immediate aid.[11]

During the trial, however, defendant raised a substantially different defense that he does not address on appeal; he argued that the call, which he implicitly conceded was an emergency call, was not obstructed. He based his argument on the facts that (1) Hannah actually made contact with the police when she used the land line in defendant's home before that call was interrupted and (2) the police in fact responded to that call. He did not raise in the trial court the issue of whether or not an emergency situation existed. In his decision, the trial justice pointed to the fact that defendant admitted to the police that he ripped the phone from the wall. The trial justice concluded that the phone had been rendered inoperable as a result. The trial justice never addressed the issue of whether or not an emergency existed, and there is no indication that defendant raised the issue.

■ This Court's well settled "raise-or-waive" rule precludes us from considering at the appellate level issues not properly presented before the trial court. *State v. Gomes*, 881 A.2d 97, 113 (R.I.2005); *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004); *State v. Donato*, 592 A.2d 140, 141 (R.I. 1991) ("[A]n issue that has not been raised and articulated previously at trial is not properly preserved for appellate review."). In our judgment, the defendant did not preserve for appeal the issue of whether or not an emergency situation existed; therefore, we decline to discuss the merits of his argument in that regard.

### Conclusion

Accordingly, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed. The papers in this case may be remanded to the Superior Court.

---

11. G.L. 1956 § 11–35–14(b)(2) defines "[e]mergency" as "a situation in which property or human life are in jeopardy and the prompt summoning of aid is essential."