### STATE

### v.

### Gary LETTS.

### No. 2007–324–C.A.

Supreme Court of Rhode Island.

Jan. 26, 2010.

---

Virginia M. McGinn, Department of Attorney General, for Plaintiff.

Catherine Gibran, Esq., Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Gary Letts appeals from a misdemeanor conviction for obtaining money by false pretenses. The conviction arises from a paving contract entered into on May 5, 2003, between Letts and Luis and Barbara Aponte. The parties appeared for oral argument on December 2, 2009, pursuant to an order of this Court ordering them to show cause why the issues raised in this appeal should not summarily be decided

without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we affirm the Superior Court's judgment of conviction.

## I

### Facts and Travel

In May 2003, Luis and Barbara Aponte decided to have their driveway widened and repaved.[1] The defendant Gary Letts, a longtime paving contractor, met with the Apontes, and their meeting resulted in a written contract dated May 5, 2003.[2] On May 8, 2003, Barbara wrote a $400 check to Letts as a deposit, which he accepted and deposited.

At trial, Luis Aponte, Barbara Aponte, and Letts gave divergent accounts of when the contractual performance was to occur. There seems to be little disagreement that during the May 2003 meeting, the Apontes told Letts that they would be vacationing between May 17 and May 26 and that they would return home on May 27. Letts handwrote in the contract's upper left side "Leave" and then "May 17–26" and then wrote the number 27, which he circled. Barbara Aponte said that she expected the work to begin about May 27, and in her view the circled 27 reflected that understanding. On October 22, 2003, her driveway still unpaved, Barbara sent a letter to Letts in which she wrote that she had expected the work to be done "on or about May 27" In that correspondence she also demanded the return of her deposit. In

---

**1.** At the time, Luis and Barbara were not married but lived together and shared expenses, and they also maintained a checking account. They subsequently were married.

**2.** Luis also had received quotes from other pavers, but chose Letts because he was impressed both by Letts's presentation and his lower price.

his testimony at trial, Luis Aponte said that Letts was to pave his driveway sometime in late June or early July, but upon being directed to the circled 27 in the contract, he remembered that he expected the performance to start on May 27 or within a reasonable time thereafter.

Conversely, Letts said that he circled the number 27 for his own purposes, as a reminder that he should not pave the Apontes' driveway until at least May 27, because the Apontes would be away until that date. Letts also indicated that if he were to specify a particular performance date, something that he rarely did, he would have followed his normal practice and indicated it on the bottom of the contract, not in the upper left. At all times, Letts asserted that he intended to fulfill his contractual obligations to the Apontes.

After the Apontes returned from vacation in late May, they contacted Letts and asked him when he would start the work at their home. Initially, Letts responded to the Apontes' phone calls; he told them that he was delayed because of rain, but he would start the job shortly. But by mid-June, Letts stopped taking the Apontes' calls. Barbara Aponte complained to the chief of the contractors' board,[3] but she did not institute any formal proceedings against Letts in that forum. It is undisputed that Letts never paved the Apontes' driveway, nor did he return their deposit.[4]

At the time of these incidents, Letts had been in the asphalt paving business for over twenty-five years. He owned and operated Atlantic Letts Company.[5] There is little question that the paving business is both seasonal and affected by the weather. Asphalt plants close during the cold weather months, and even after they reopen in the spring, paving cannot be done properly in wet conditions. Because of these factors, Letts said that he usually provided clients with estimated dates that he would begin paving on their property.

By May 2003, Letts said that he had a backlog of at least fifty jobs. He also testified that under favorable weather conditions, he could complete about ten jobs per week or thirty-five to forty jobs per month. Letts said that unfortunately, the weather between March and May 2003 was frequently rainy, with only intermittent periods of dry conditions.

In November 2003, after the Apontes filed a complaint, Letts was arraigned in District Court for the misdemeanor offense of obtaining money by false pretenses in violation of G.L.1956 § 11–41–4. On February 24, 2004, Letts's District Court offense was transferred from the District Court to the Superior Court. There it was consolidated with two felony offenses of obtaining money by false pretenses against Letts.[6]

---

3. General Laws 1956 chapter 65 of title 5 provides for the types of registration of contractors. This chapter also creates a board, known as the contractors' board, to address disputes between contractors and clients, and it establishes claims that may be brought against contractors before the board.

4. After his conviction, Letts returned the Apontes' $400 deposit.

5. Atlantic employed six people, including Letts, an office manager, and four pavers.

6. Between March 14 and 16, 2003, Letts entered into a written contract with David Pezzullo for the paving of Pezzullo's driveway; Pezzullo paid Letts a $2,400 deposit. Their written contract was silent as to when Letts's performance was to occur. Letts said that he told Pezzullo that he would not be able to start the job for at least five to six weeks and that he would call Pezzullo when he knew his schedule; Pezzullo claimed that Letts represented to him that the paving would be done in April. Also in late March 2003, Letts entered into a written contract with Thomas and Laurie Rossi for the paving of their driveway;

A nonjury trial was held on November 8 and 9, 2006. The state offered the testimony of Luis and Barbara Aponte, as well as two former clients of Letts who were the complaining witnesses in the two felony counts against Letts. The defendant testified on his own behalf and he also produced two witnesses who testified that they were former clients who contracted with him in May or June 2003 for paving work and that Letts ultimately completed these paving jobs in September or October 2003.

On December 4, 2006, the trial justice found Letts guilty of the misdemeanor count of obtaining money by false pretenses. Letts received a one-year suspended sentence and a one-year period of probation. He timely appealed his misdemeanor conviction to this Court.

## II

### Issue on Appeal

On appeal, Letts raises the argument "that the evidence adduced at this trial does not support the conclusion that [he] received the Aponte's $400 deposit in May of 2003 * * * with the intent to cheat or defraud them." He contends that the trial justice both misconceived the evidence and drew unreasonable inferences from it. Specifically, Letts argues that the trial justice erroneously found that he was aware of certain personnel and equipment problems as of May 5, 2003, when he entered the contract with the Apontes and accepted their check. Letts further argues that the trial justice incorrectly found that the circled 27 on the contract indicated a time for performance of his obligations under the paving contract. Lastly,

Letts contends that the trial justice's conclusion that Letts accepted the $400 deposit in an effort "to fund his then 'floundering' business" was in error because it is "merely unsubstantiated speculation."

## III

### Standard of Review

"In a jury-waived criminal proceeding, this Court gives deference to a trial justice's finding of facts." *State v. Forand*, 958 A.2d 134, 138 (R.I.2008) (citing *State v. Harris*, 871 A.2d 341, 346 (R.I.2005) and *Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I.1998) (mem.)). This Court will not overturn a trial justice's finding of facts "unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *State v. Silvia*, 798 A.2d 419, 424 (R.I.2002) (quoting *State v. Traficante*, 636 A.2d 692, 694 (R.I.1994)). The trial justice is not required to provide "an exhaustive analysis of the evidence or a specific statement of all the reasons for his conclusion." *State v. Aurgemma*, 116 R.I. 425, 436, 358 A.2d 46, 52 (1976). Under this standard, "our role is 'to review the record carefully to see if it in fact contains sufficient evidence to support the trial justice's conclusion.'" *Forand*, 958 A.2d at 138 (quoting *Harris*, 871 A.2d at 346).

## IV

### Analysis

Section 11–41–4 provides that "[e]very person who shall obtain from another designedly, by any false pretense or

---

the Rossis gave Letts a deposit check of $1,325. Thomas Rossi said that Letts told him that he would begin work toward the end of April or early May. Again the written contract was silent about when performance was

to begin. Ultimately, Letts did not pave either the Rossi or Pezzullo driveway, and felony criminal charges were filed. After the consolidated trial, the trial justice found Letts not guilty on the two felony charges.

pretenses, any money, goods, wares, or other property, with intent to cheat or defraud, * * * shall be deemed guilty of larceny." "[T]he essential elements of obtaining property by false pretenses are that the accused (1) obtain property from another designedly, by any false pretense or pretenses; and (2) with the intent to cheat or defraud." *State v. Markarian,* 551 A.2d 1178, 1180 (R.I.1988).

## A

### False Pretense(s)

Under the statute, a false pretense may be a misrepresentation of a past or existing fact. *Aurgemma,* 116 R.I. at 430–31, 358 A.2d at 49–50. A promise to perform a future act may also constitute a false pretense. *Id.* at 431, 358 A.2d at 50. "[I]n an action for deceit intention not to meet a future obligation is a question of fact to be submitted to the jury and that misrepresentation of a present state of mind as to such intention is a false representation of an existing fact." *Id.* (quoting *State v. McMahon,* 49 R.I. 107, 108–09, 140 A. 359, 360 (1928)). Therefore, "the rule in this state is that a misrepresentation with regard to a *future transaction,* no less than one relating to an *existing fact,* is a false pretense within the meaning of § 11–41–4." *Aurgemma,* 116 R.I. at 431, 358 A.2d at 50 (emphases in original).

In his bench decision, the trial justice found as a fact that on May 5, 2003, "defendant was well aware of his predicament, continuing bad weather and personnel and equipment problems, that had put him in a position that a very experienced paving contractor had to recognize. That is, he could not possibly perform paving work for any new customers, including the Apontes, at that point in time, and to represent otherwise was knowingly deceptive and fraudulent."

After reviewing the record, and after giving due deference to the trial justice's factual conclusion, we hold that the trial justice did not clearly err when he found that Letts misrepresented his intention to perform his contract with the Apontes within a reasonable time of May 27, 2003. As we reiterated in *Aurgemma,* "intention not to meet a future obligation is a question of fact" and "misrepresentation of a present state of mind as to such intention is a false representation of an existing fact." *Aurgemma,* 116 R.I. at 431, 358 A.2d at 50 (quoting *McMahon,* 49 R.I. at 108, 140 A. at 360). Here, the trial justice found that Letts misrepresented his intention to perform a future obligation, *i.e.,* to perform the Aponte paving job within a reasonable time of May 27, 2003, when he entered into a contract with the Apontes on May 5, 2003. Because this was an issue of fact, we give great deference to the trial justice's findings. *Forand,* 958 A.2d at 138. We cannot conclude that the trial justice's findings of fact and his conclusion as to the first element of obtaining money by false pretenses were clearly wrong. Sufficient evidence exists in the record to support the trial justice's conclusion that in light of the fifty-plus job backlog and the poor weather conditions at the time, Letts deliberately misrepresented his intention to perform the Apontes paving job within a reasonable time after May 27, 2003. *See id.*

## B

### Intent to Cheat or Defraud

"[T]he crime is complete when the defendant intentionally uses false pretenses to induce another to alter or terminate any of that person's rights or powers concerning the money or property with the intent to cheat or defraud that person." *State v. Fiorenzano,* 690 A.2d 857, 859 (R.I.1997). This Court has defined an in-

tent to defraud as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate [that other person's] * * * right, obligation or power with reference to property." *Id.* (quoting *State v. LaRoche*, 683 A.2d 989, 996 (R.I.1996)). Such intent can be inferred, and the only relevant time period is when the victim is "induced to part with his money or property." *Id.* at 860 (quoting *Aurgemma*, 116 R.I. at 429–30, 358 A.2d at 49). An innocent or negligent misrepresentation is insufficient to convict; the defendant must intend to defraud. *Id.*

The state does not have the burden to prove that the defendant intended to permanently deprive a person of his or her property. *LaRoche*, 683 A.2d at 997; *Aurgemma*, 116 R.I. at 429–30, 358 A.2d at 49. Further, "even proof that a victim has suffered no loss whatsoever or that the money fraudulently obtained has been repaid will not suffice as a defense." *Aurgemma*, 116 R.I. at 430, 358 A.2d at 49.

The trial justice found that Letts's "acceptance of a $400 deposit, knowing his bleak financial circumstances, establishes his intent to cheat and defraud the Apontes." The evidence clearly establishes that Letts deposited the $400 check he received from Barbara Aponte. The trial justice found that Letts induced the Apontes to enter into the contract under the intentional false representation that Letts would perform his work within a reasonable time after May 27, 2003, and, as discussed above, we will not disturb that finding. Similarly, it is our opinion that the trial justice did not err when he found that Letts's "intent to cheat or defraud" was established when he accepted the $400 deposit on May 8, 2003 after intentionally using false pretenses to obtain the deposit from the Apontes.

## V

## Conclusion

The judgment of conviction is affirmed. The papers in this case are remanded to the Superior Court.